STEPHEN NICKERSON, Administrator *vs.* ASA S. BOWLY, Executor.

A testator devised and bequeathed to his wife the use and improvement of all his estate, real and personal, during her widowhood; made her the executor of his will, and died without issue, and without making any further disposition of his property His wife survived him, remained a widow, and had the use and improvement of all his estate during her life. *Held,* that the residue of the personal property of the testator vested, on his death, one half in his widow, and the other half in his heirs at law, by virtue of *St.* 1805, *c.* 90, § 2; and that, upon her decease, her executor was entitled to one half of such residue.

THIS was an appeal from a decree of the judge of probate for the county of Barnstable, and was submitted to the court on the following statement of facts:

Thomas Rider of Provincetown, on the 29th of November 1796, made his last will, in these words: " As to such worldly interest as God hath been pleased to bless me with in this life, I give, bequeath, devise and dispose of the same in the following manner, viz. I give and bequeath to my wife, Polly Rider the use and improvement of all my estate, real, personal and mixed, for her own use and benefit, so long as she may continue my widow. I also constitute and appoint my wife, Polly Rider, to be executor of this my last will and testament." No other disposition of any part of said Rider's estate was made by will; and he died, December 23d 1830, leaving real and personal estate more than sufficient to pay his debts and the expenses attending his decease. He left no lineal descendants, but left numerous collateral relations, his heirs at law, of whom Rebecca R Nickerson, wife of the appellant, was one.

Said will was proved and allowed in March 1831. The wife of the testator survived him, accepted the trust of executor and never afterwards married. She took the use and improvement of said real and personal estate during her life, and died in 1841, leaving a will, of which she appointed Asa S. Bowly, the appellee, to be the executor, and which was proved and allowed on the 5th of November 1841. On the same day, Stephen Nickerson, the appellant, was appointed administrator *de bonis non*, with the will annexed, of said David Rider, and, on the 1st of April 1844, rendered to the judge of probate an account of the personal estate of said David, showing a balance of $1118·64 in said Stephen's hands, belonging to the heirs or legal representatives of said David. The judge of probate thereupon passed a decree of distribution, in which said Stephen was directed to pay one half of said balance to said Asa S., as executor of the last will of said Polly Rider. From this decree the said Stephen appealed.

*C. H. Warren,* for the appellant. The question in this case is to be decided upon the construction of *Sts.* 1783, *c.* 24, § 10, and 1805, *c.* 90, § 2, which were in force at the time of David Rider's decease. By the former of these statutes, property not devised or bequeathed was to be " distributed in the same manner as if it were an intestate estate." By the latter, " personal estate not lawfully disposed of by last will," after payment of debts, &c. is to be distributed, one half part thereof to the widow, if there be no issue of the husband. The appellee will rely on this last provision. But the appellant submits, that this provision relates to cases of total intestacy only, and that a widow, who is provided for in a will, has no claim to any thing further. The title of *St.* 1805, *c.* 90, is " an act regulating the descent and distribution of intestate estates." By *St.* 1783, *c.* 36, § 3, the personal estate of a deceased person was chargeable with the payment of his debts, &c. and a decree of the judge of probate was necessary, in order to entitle the widow to a distributive share of the surplus. In the case at bar, the widow made no application for a decree ; and her representative cannot now apply for a decree for her benefit. She accepted

36 *

the provisions of the will, and enjoyed the property therein bequeathed to her    This was a waiver of any further claim. See *Crane* v. *Crane*, 17 Pick. 422. *Delay* v. *Vinal*, 1 Met. 57.

Where an executor is appointed, there can be no undevised *personal* property.    The personalty goes to the executor, as trustee for the *next of kin*. *Hays* v. *Jackson*, 6 Mass. 152. But an executor cannot take as trustee for himself ; and a wife is not of kin to the husband.    In *Russell* v. *Hoar*, 3 Met. 192, it was said that "all the property of the testator, not by him devised or bequeathed, descended to, and vested in, the *two daughters* of the testator, immediately on his death." Yet there was a widow in that case.    See also *Ferson* v. *Dodge*, 23 Pick. 295.    2 Roper on Leg. (1st Amer. ed.) 492.

The testator's intention to dispose of the *whole* of his estate is manifested by the will, in which he speaks of disposing of "such worldly interest" as he had been blessed with. *Jackson* v. *Merrill*, 6 Johns. 191.    And there is an implied disposal of the unbequeathed personalty to the heirs at law.    The whole doctrine of implication is deduced from the testator's intention. Here his intention clearly was, that his wife should have no more than he mentions in his will.    See Com. Dig. Estates by Devise, N. 12.    1 Jarman on Wills, 460 & *seq*. *Wilkinson* v. *Adam*, 1 Ves. & Beames, 466. *Vauchamp* v. *Bell*, Mad. & Geld. 343.    *The King* v. *Inhabitants of Ringstead*, 9 Barn. & Cres. 224.    *Ex parte Rogers*, 2 Mad. R. 455.    *Roe* v. *Bendale*, 5 Bur. 2608.    *Willis* v. *Lucas*, 1 P. W. 474.

*Scudder & Clifford*, for the appellee.    The undevised reversion in the testator's real estate vested, at his death, in the heirs, and the unbequeathed personalty in the widow and heirs.    By the common law, before any statutes on the subject, *pars rationabilis* of a husband's personal property was his wife's right, upon his decease.    The *Sts.* 13 and 33 Edw. III., 21 Hen. VIII. and 22 Car. II. *c.* 10, were all confirmatory of the common law.    2 Bl. Com. 493, 495, 516.    Our *Sts.* 4 Wm. & Mary, *c.* 8, § 2, (Anc. Chart. 231,) 1783, *c.* 36, § 3, and 1805, *c.* 90, § 2, have also confirmed this common law right.    That a total intestacy is not necessary, to entitle a widow to her distribu

tive share, under *St.* 1805, *c.* 90, is shown by the cases of *Briggs* v. *Hosford,* 22 Pick. 288, and *Ex parte Kempton,* 23 Pick. 163, where her share was decreed to her in cases of partial intestacy. In the latter case, there was also a provision for the widow, in the will; as in the case at bar. See also 2 Roper on Leg. (1st Amer. ed.) 490. The Rev. Sts. *c.* 62, § 5, negative the supposition that a total intestacy is meant in a case like this. The provision there is, that "all estate not disposed of by the will shall be administered as intestate estate."

The widow's right vested, so as to authorize a distribution to her representatives. *Judge of Probate* v. *Robins,* 5 N. Hamp. 246. *Hayward* v. *Hayward,* 20 Pick. 520. The case of *Foster* v. *Fifield,* 20 Pick. 67, also shows that the widow's right does not depend upon a decree of distribution. And if she cannot take, by force of the statute, without a decree, the children cannot; for both stand on the same ground.

The argument for the appellant, that the testator did *not intend* that his widow should have any thing more than he gave her in the will, and that he did intend that his heirs at law should have the residue, might be fully answered by saying that he intended that the residue should take the direction which the law would give it; and that the law gives it to the widow and to the heirs. But the authorities furnish another answer. In *Atkins* v. *Kron,* 2 Iredell Eq. Rep. 58, a testator gave to each of his heirs a certain portion of his property, " and no more." Yet it was held that these words did not exclude the heirs from other portions of his property which he had not effectually bequeathed to others; for, as to such portions, they took by law, independent of, and even against, his intentions. And the analogy of dower and *pars rationabilis* of a widow favors the appellee's claim. By the common law, a legacy to a widow does not bar her claim to dower. It is by statute only, that such claim is barred, and that by express declaration of the testator, or by necessary implication from the terms of the will. See *Reed* v. *Dickerman,* 12 Pick. 149. And it must be by statute only, that a legacy can bar a widow of her third or half of the unbequeathed personalty of her husband. See Toller on Executors, (4th ed.) 386.

In *Ferson* v. *Dodge*, 23 Pick. 287, the question must have arisen, which is now before the court. And it *may* have been there decided according to the views above presented. But this does not appear from the report of the case. The court said that the intestate property was to be " distributed among the heirs at law, according to the statute of distributions." By this was probably meant, a distribution among those who were *entitled* by that statute. And in 6 Mass. 152, 153, where it is said " the executor is trustee of the undisposed residue for the *next of kin*," the persons *entitled to such residue*, by the statute of distributions, were manifestly intended.

The *dictum* in *Russell* v. *Hoar* was extrajudicial; for the present question was not before the court. The appellant, in that case, was excluded from the unbequeathed property, whether it went to widow and daughters, or to the daughters only.

The precise question now raised, if never adjudged in this Commonwealth, has frequently been decided in England, in favor of the widow and her representatives. *Gobsall* v. *Sounden*, 2 Eq. Cas. Ab. 444, 445. *Davers* v. *Dewes*, 3 P. W. 40. *Oldham* v. *Carleton*, 2 Cox, 399. *Dicks* v. *Lambert*, 4 Ves. 725.

Shaw, C. J. The question in the present case affects the personal estate only left by Thomas Rider, and not disposed of, in terms, by his will; and it must depend upon the *St.* of 1805, *c.* 90, § 2, which was in force at the time of the testator's death in 1830, and was the law by which estate, not disposed of by last will, was then regulated. It provides that, " when any person shall die possessed of any personal estate, not lawfully disposed of by last will," (after various other directions,) " the widow shall be entitled to one half of the residue, if there be no issue."

It is a well established rule of law, that the right to a distributive share of personal estate, under the statute of distributions, is a vested interest, vesting, in point of right, at the time of the decease of the intestate, although the persons to take, and the amount to be received, must be ascertained and determined by a decree of the probate court; which, from various causes affecting the settlement of the estate, may not

ᴐe made till long afterwards. 3 P. W. 49, *note*. *Foster* v *Fifield*, and *Hayward* v. *Hayward*, 20 Pick. 70, 519. It seems to follow, as a necessary consequence, that Mrs. Rider's vested right to one half of the personal property, subject to the gift of the use thereof to herself for life, like all other vested rights to personal property, went to her personal representatives. Such was the view which appears to have been taken of the case by the probate court; and we are of opinion that it was correct.

Several objections were taken, in the argument, to this decree, which it may be proper briefly to consider. 1. It was contended, that in order to let in the claim of the widow to one third, if there be issue, and to one half, if there be no issue, there must be an entire intestacy ; that is, that the deceased shall have made no will. But such, we think, is not the construction of the terms of the statute, nor its legal effect. In terms, it extends to personal property not disposed of by will. It applies to estates as it finds them ; if there has been no will, then to the whole estate ; if there be a will, not disposing of the whole of the personal estate, then it extends to the estate not disposed of by such will. Nor can any argument be drawn from the expression by which the deceased is called the intestate — " if the intestate shall leave a widow." The terms *testator* and *intestate* are used to mark the general distinction between a deceased person who makes a will and one who does not ; and for shortness and convenience, applicable to the majority of cases, such a description is useful. But, as it is clear that a person may dispose of part of his property by will, but not all, and it becomes necessary to mark the distinction, he may be properly designated as a testator in regard to the property which passes by his · will, and an intestate as to all other property.

Nor is there, in our view, any more force in the argument drawn from the title of the statute, being " an act regulating the descent and distribution of intestate estates." Supposing the title could be resorted to as a medium of expounding a statute, (which is doubtful,) here the term " estate " obviously means

property, and the qualifying term "intestate" confines it to property not given by will.

But the more decisive consideration is, that the argument, if well founded, would exclude the children and next of kin, as well as the widow ; for the same provision in the statute of distributions, which gives property not disposed of by will, where there is a will, to children and others next of kin, gives a distributive share to the widow.

2. Another ground taken was, that by the earlier statute of distributions, (*St.* 1783, *c.* 36, § 3,) the phraseology is, not that the widow shall be entitled to one third, but that one third shall be decreed to her by the judge of probate ; from which it is -inferred, that it is a personal right, and that if she dies before such decree made, the right is gone. It is extremely doubtful, to say the least, whether such would be the construction. The form of that statute was, first directing the descent of real estate, in which, of course, the widow does not take a share, because in that she has another and higher right, that of dower. It then declares that personal estate shall be distributed among heirs, in the same way and manner real estates descend, with some modifications, one of which is, that one third shall be decreed to the widow. Now, as the rights of all the distributees must be ascertained, and adjudged by a decree of the probate court, before they can claim a distributive share of the administrator, when it is declared by law that a certain proportion of that fund shall be decreed to the widow, it seems equivalent to declaring that she shall have it, or be entitled to it. But if the argument were well founded, and there be this distinction in the statutes—the one declaring her title to the distributive share, and the other ordering such share to be decreed to her — then the former is repealed by the latter, and the latter, declaring the title, must govern.

3. It was suggested, that when there is a will and an executor appointed, there can be no property undisposed of, because by law the property vests in the executor. If this ancient rule of law were in force here, and could stand consistently with our statute, and if it were so construed as that the executor would

take *beneficially* in the present case, the whole residue vested in the widow, because she was herself executrix. But this rule is considered not to apply, even in England, where a legacy is given to the executor, or where it is declared or may be inferred from the will, that it was not intended. *Dicks* v. *Lambert*, 4 Ves. 729. It was intimated by Parsons, C. J. in *Hays* v. *Jackson*, 6 Mass. 152, that, according to the strict rules of law, there could be no undevised personal estate, where an executor was appointed, because he has all the personal estate in trust, to pay debts and legacies, and the residue to his own use, unless excluded by the will. But this rule of law he considered as controlled by *St.* 1783, *c.* 24, § 10. His conclusion was, that now the executor is, in all cases, trustee of the undisposed residue, for the next of kin. This passage was relied on in the argument to show that, under such trust, the widow could not claim, she not being *next of kin*, and could not be trustee for herself. It is manifest, that in this passage, the term "next of kin" was used to include all persons, who could claim under the statute of distributions, as the statute is expressly referred to, and is said to have removed all doubt, and to have shown that such undisposed property should be administered by the executor, in the same manner as it would be by an administrator if there was no will. If an executor is considered, by any technical rule of law, as holding the legal estate in trust, it may be as well for himself as for others. Suppose the executor were a son, instead of a widow; he would be regarded, in the case supposed, as trustee for himself and other children, if any.

But the principal argument is, that it cannot be reasonably inferred, that it was the intention of the testator, after giving the whole of his personal property to his wife for life, that she should have any part of it absolutely ; and in the absence of all expression of his intentions, it shall be construed as a gift to his heirs, by implication.

A gift by implication must be founded upon some expressions in the will, from which such intention can be inferred. It cannot be inferred from an absolute silence on the subject. It may be admitted in a popular sense, that when a deceased person has given a part of his property to one object of his

bounty, he had no intention that such person should take another portion.  But we think the true answer is, that the intention of the testator is to govern, so far only as he has communicated that intention, *by his will*, either in terms or by implication ; but if he has left undevised property, the disposition of it is not governed by his will, but by another rule having its origin in another source, in the application of which the intent of the testator is not the governing rule, and can have no influence.  It operates in the same manner, as if the deceased had left no other property and made no will.  If, therefore, the intent of the testator, not to give the remainder to the same person, could reasonably be inferred from a gift of personal property to one for life,'in terms, it could have no effect in regulating the disposition of intestate property.  If, however, it were thought important to inquire into the intent of the deceased, when he has made a will, but left property undisposed of, either in terms or by implication ; as every man is presumed to know the law, it may reasonably be inferred, as his *intention*, that the residue should be disposed of according to law.

But this point seems to be well settled by authorities, both in England and in this Commonwealth.  *Davers* v. *Dewes*, 3 P. W. 40.  *Dicks* v. *Lambert*, 4 Ves. 725, 732.  When a bequest of personal property is made to the wife, the part undisposed of shall go to her and the next of kin, according to the statute of distributions.  *Briggs* v. *Hosford*, 22 Pick. 288.  *Ex parte Kempton*, 23 Pick. 163.                    *Decree affirmed.*